[No. 8,900. In Bank.—October 28, 1884.]

## GEORGE WINANS, RESPONDENT, v. SIERRA LUMBER COMPANY, APPELLANT.

NEW TRIAL—CONFLICT OF EVIDENCE.—A verdict rendered upon substantially conflicting evidence should not be disturbed and a new trial granted, except for errors of law occurring at the trial.

INSTRUCTIONS.—Instructions not prejudicial to the losing party, although erroneous, are no ground for reversal.

DAMAGES—BREACH OF CONTRACT—CONTRIBUTORY NEGLIGENCE.—In an action for damages for injuries arising out of contract or tort, a party cannot recover if the injuries were consequent upon his own contributory negligence. Every party to a contract must do all in his power to prevent loss from a breach of contract by the other party, and if unable to prevent the loss altogether, must use reasonable exertions to make it as light as possible. If he permits the damages to be enhanced by his own wilfulness or negligence, the increased loss will fall upon him.

ID.—PARTIAL BREACH OF CONTRACT.—Where there is a partial breach of contract susceptible of more or less performance, the injured party may continue to carry out the contract, reserving to himself a right of action for such damages as he may have sustained by the partial breach.

ID.—MEASURE OF DAMAGES.—The plaintiff contracted to manufacture lumber, and the defendant agreed to purchase all that the plaintiff should manufacture at a stipulated price, and to furnish certain machinery for the work. The machinery proved insufficient and not in accordance with the contract, and the plaintiff was thereby prevented from manufacturing as much lumber as he otherwise would have done. *Held*, that the measure of damages was the contract price of the lumber which he was so prevented from manufacturing, less the expense he would have incurred in manufacturing it, over and above the amount necessarily expended in manufacturing the amount actually furnished by him.

APPEAL from a judgment of the Superior Court of the county of Tehama, and from an order refusing a new trial.

The facts appear in the opinion of the court.

*Chipman & Garter*, and *Mastick, Belcher & Mastick*, for Appellant.

*J. F. Ellison, J. Chadbourn*, and *A. P. Catlin*, for Respondent.

McKEE, J.—Appeal from a judgment, and order denying a motion for a new trial.

On the 15th of March, 1881, the Sierra Lumber Company, being the owner of some tracts of timber lands, two sawmills, known as the Champion and Yellow Jacket mills, situate in Tehama County, together with a lumber yard and planing mill, a

water flume, extending from the Champion mill to its lumber yard, and personal property used in connection therewith, made and entered into a contract with George Winans, the plaintiff to the action in hand, to deliver to him possession of said property, including a specified number of teams and trucks for hauling logs, and to furnish him sufficient strap iron and rails for a tramway, and a suitable engine and cars for the tramway. Winans agreed to construct the tramway from the Champion to the Yellow Jacket mill at his own expense, and to operate the mills during the lumbering season of 1881, for manufacturing from the timber lands of the company, lumber, which, when manufactured, was to be delivered at the lumber yard, to the company, who agreed to pay for the same, when delivered, nine dollars per thousand feet, and eight dollars per thousand feet for any undelivered lumber remaining at the mills on the 1st day of December, 1881, when the mill property was to be surrendered to the company.

The company furnished the two mills with their equipments, the flume, the outfit for logging, and the iron for the tramway to be constructed by the plaintiff; and the plaintiff entered into possession under the contract, constructed a tramway, and operated the mills through the lumbering season of 1881, during which he manufactured five and one-half millions feet of lumber, all of which the company received from him, and settled for at the contract price.

But the plaintiff charges that while he fully performed the contract on his part, the defendant on its part failed to fully perform it, in this : that it neglected and refused to furnish a suitable engine for the tramway which he constructed. In fact, the company did furnish an engine : but the plaintiff alleges that it was wholly unsuitable for the tramway, " by reason of the peculiar make of its wheels," and would not work properly on the tramway ; and although repeatedly notified and informed of the fact, defendant refused to furnish a suitable engine, in consequence of which plaintiff was able to manufacture only five and a half millions feet of lumber; when, if he had been furnished with a suitable engine for the tramway, according to the contract, " he would have cut nine millions feet at no greater cost or expense than he was put to in the manufacture of said five and a half millions feet."

In answer to this, the defendant averred that the contract was for the manufacture of 7,000,000 feet of lumber, for which the company promised to pay $9 per M; and admitted that the plaintiff entered upon the performance of that contract, and commenced to construct the tramway called for by the contract, but averred "that the plaintiff failed to build and complete about three and a half miles of the tramway, and that the six and a half miles constructed by him were constructed with such short and irregular curves and uneven and excessive grades, and in so unworkmanlike, insufficient and defective a manner, that it could not be successfully worked by him, and was of little value when turned over to defendant at the end of the season."

The questions at issue as raised by the pleadings, therefore, involved inquiries as to the contract under which the parties had acted—the plaintiff in constructing the tramway, and the company in furnishing the engine; and as to the character and sufficiency of the tramway, and the suitability and sufficiency of the engine. It was conceded that the engine and tramway did not work well together; but the great question was, whether the faults which caused that result, and occasioned the loss of which the plaintiff complained, were in the engine or in the construction of the tramway.

As to the contract, there was given evidence tending to prove that it had been made by the plaintiff and the general superintendent of the company. It was admitted that both parties acted under the contract which was made, and each claimed to have fully performed it. The company gave evidence tending to show that the contract was for the manufacture of 7,000,000 feet of lumber; the plaintiff, that the contract was "to manufacture all the lumber he could." Much evidence was also given in relation to the construction of the tramway, and the suitability and sufficiency of the engine which the company furnished, and which the plaintiff used and operated in the performance of the contract. There was also evidence given tending to prove that the plaintiff had men, machinery and force sufficient to operate the mills at their full capacity for the lumbering season of his contract, and that he could have manufactured during the season a greater quantity of lumber than he

actually did.   The verdict was for the plaintiff; and as it was rendered upon substantially conflicting evidence it cannot be disturbed, and a new trial granted, except for errors of law occurring at the trial; and the main matters urged on this appeal are errors of law occurring at the trial.

The first relates to instructions given to the jury upon the question of the authority of an agent of a corporation to make a contract for the corporation.   At the defendant's request, the court had given the jury some instructions upon the subject of the ostensible authority of such an agent, and then quoted to them the language of sections 2315–16–17 of the Civil Code; and, in connection therewith, substantially told them that the plaintiff would not be entitled to recover, unless they found as a fact that the superintendent of the company had been authorized to contract for the company.   The defendant excepted to the instructions; but the instructions as given were favorable and not prejudicial to the defendant.

As to the performance of the contract by the parties, the following was given: " One of the parties to a contract cannot complain of a failure on the part of the other to perform, if his own laches or refusal to perform has contributed to defeat the object of the contract.

" Proof of perfection, however, in tramway, cars or engine, is not required: only such as from the evidence you find that the parties contemplated such a tramway, such cars, and such an engine, and only such, to fulfill the contract, as a prudent man, owning the timber and mills, would have made or furnished for himself, having in view present and future pecuniary profit."
Defendant excepted to the latter portion of the instruction.
We think it was not objectionable.   In substance it told the jury, that to entitle either of the parties to their verdict it was not necessary for the plaintiff to prove that he had constructed a perfect tramway; nor for the defendant to prove that he had furnished a perfect engine.   The contract only required such a tramway or engine as, in the situation of the parties, and in the light of surrounding circumstances, would be sufficient and suitable for the business in which they were about to engage.
To the first part of the instruction the defendant did not object.
In fact, it was given at the request of the defendant; and in

connection with it, the court elaborately instructed the jury, that if they believed from the evidence that the loss of which the plaintiff complained resulted from his own failure to perform his part of the contract, or from his negligence in constructing the tramway, or in operating the engine which the company furnished, or from the want of ordinary care and caution either in operating the engine, or in constructing the tramway, or in repairing the particular places where the injury was threatened or was likely to arise, he would not be entitled to their verdict, even if they found as a fact that the engine furnished by the defendant was defective, and unsuitable for the tramway.

The elaborate instructions which were given placed the right of the plaintiff to recover upon the ground that he himself must have been wholly free from fault, not only in performing his part of the contract, but in operating the engine which was furnished to him.   And there is no doubt that a person who sues to recover damages for injuries in an action arising out of contract or tort, cannot recover if the injuries were consequent upon his own negligence, which directly contributed to them. The law imposes upon every one engaged in the performance of a contract the duty of doing everything in his power to prevent loss to himself from a breach of the contract by the other party. If he cannot prevent it altogether, he must make reasonable exertions to render it as light as possible; and if, by his own negligence or wilfulness he allows the damages to be unnecessarily enhanced, the increased loss must fall upon him. (*Hamilton* v. *McPherson,* 28 N. Y. 72.) The question, whether the loss of which the plaintiff complained was due to the laches of the plaintiff, or to the non-performance of the contract by the defendant, was, therefore, properly put to the jury; and if the evidence satisfied the jury that the engine furnished by the defendant was so defective that the plaintiff was prevented from manufacturing the quantity of lumber which he could have manufactured with a suitable engine, and thereby sustained a loss, he was entitled to recover, unless he had by his conduct estopped himself from maintaining the action.

There was evidence given of a settlement between the parties, after the close of the lumbering season of the year 1881, of the affairs and business of the parties in connection with the

lumber manufactured and delivered under the contract. At that settlement, the plaintiff made no mention of any claim, or cause of action, against the defendant for a partial breach of the contract. But if the plaintiff had such a cause of action, he was not bound to make it known at a settlement about the lumber actually manufactured; and the mere non-mention of it would not estop him from maintaining an action upon it. The instructions to the jury that the plaintiff would not be estopped, unless they believed from the evidence that he, by his acts, declarations, or omissions had intentionally and deliberately led the defendants to believe that the engine furnished was according to the contract, and that the defendant relied upon such acts, declarations, or omissions to its injury, were, we think, correct. And we think the court correctly instructed the jury, that when the plaintiff discovered " that the engine was unsuitable for the tramway, he was not bound to rescind the contract, and make no further effort to carry out its purposes. He was at liberty to go on and manufacture all the lumber he could under the circumstances, and endeavor in good faith to carry out the contract; and by so doing he would not release or forfeit any claim for damages he might ultimately sustain by reason of any breach of the contract by the defendant." The contract was one susceptible of more or less performance ; and if there was a partial breach of it by the defendant, the plaintiff had the right to continue to carry out the contract, reserving to himself the right to bring action for such damages as he may have sustained by the partial breach.

If there was such a breach, resulting in loss to the plaintiff, the question then remained, What was the measure of damages ? Upon that question, the following instructions were given :

" For the breach of an obligation arising from contract, the measure of damage is the amount which will compensate the party aggrieved for all detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

" Where an action is brought to recover general damages for a breach of contract, the jury may take into their consideration any consequential damages which the plaintiff has sustained by reason of such breach, provided that such damages may fair-

ly and reasonably be considered either as arising naturally—that is, according to the usual course of things—from the breach of the contract itself, or may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of a breach of it."

"If the jury believe from the evidence that the engine furnished by defendant to plaintiff was not of the make and description it had contracted to furnish him; and that the plaintiff duly notified the defendant of the defects in said engine, and of its unfitness for the purposes of said contract, and afterwards, without any default on his part, made every reasonable effort, in good faith, to accomplish the purposes of said contract, and to prevent loss or injury; but ultimately, by reason of the defendant's failure to furnish an engine of the kind and make agreed to be furnished, suffered damage, and was prevented from manufacturing lumber which he otherwise would have manufactured, then the plaintiff is entitled to recover, as damages, the contract price for the lumber which he was so prevented from manufacturing, less the expense he would have incurred in manufacturing said lumber, over and above the amount necessarily expended, under the circumstances, in manufacturing the amount actually manufactured by him."

We think these instructions were right.

The contract being one susceptible of more or less performance, the damages sustained by an incomplete performance or partial breach were apportionable according to the extent of failure. That would cover the actual loss sustained, and the actual loss would be the profits which the plaintiff could have made upon a complete performance of the contract (*Utter* v. *Chapman*, 43 Cal. 283; *Upstone* v. *Weir*, 54 Cal. 124; *Hale* v. *Trout*, 35 Cal. 229.) And these profits would be the product of the lumber which he was prevented from manufacturing by the partial breach of the contract, and the contract price, less the expenses which would have been incurred in its manufacture.

There was evidence tending to prove that the plaintiff had made preparation by men and means to manufacture lumber to the extent of the capacity of the mills; and that with this force he could have manufactured with a suitable engine more lumber than he did manufacture. But defendant denied "that

the plaintiff could have cut nine million feet of lumber at no greater cost or expense than he was put to in the manufacture of the lumber he, in fact, manufactured," and contended that the manufacture of any additional lumber would have involved the expense of cutting additional logs, and making them ready to be hauled over the tramway and laying them at the mills for the purpose of manufacture, even if he had a force of men and logging teams employed for that purpose, and that such additional expenses should be deducted from the profits of any additional lumber which could have been manufactured. That contention was founded upon some evidence in the case, and it was fairly covered by the instruction that the plaintiff, if he was entitled to recover at all, was entitled to recover as damages the contract price of the lumber which he was prevented from manufacturing, less the expense he would have incurred in its manufacture, "over and above," i. e., separate from the expense he had incurred in and about the lumber which he had actually manufactured.

It was also contended that the value of the use of the tramway and engine by the plaintiff for his individual benefit, at times which did not interfere with the performance of the contract, should be deducted from any damages sustained by the plaintiff. But that matter entered into the settlement between the parties as to the lumber actually manufactured; and the defendant admitted that the plaintiff had paid for the same.

Taken in connection with the evidence and pleadings in the case, we think the instructions, as a whole, correctly stated the law of the case, and presented the case fairly to the jury; and as we find no prejudicial error in the numerous assignments of errors, the judgment and order are affirmed.

MYRICK, J., SHARPSTEIN, J., and THORNTON, J., concurred.

Rehearing denied.