[Civ. No. 3196. First Appellate District, Division One.—May 3, 1920.]

CHARLES F. STERN, Superintendent of Banks, Respondent, v. SUNSET ROAD OIL COMPANY, Defendant; SAN PEDRO, LOS ANGELES AND SALT LAKE RAILROAD COMPANY, Appellant.

[1] CONTRACTS — DIVISIBILITY — INTENTION OF PARTIES — OBJECT OF AGREEMENT—DEFAULT IN PART.—The divisibility of a contract does not alone depend upon the multiplicity or the separability of the items therein, but upon the intention of the parties and the object of the contract. If it is the intention of the parties to treat the contract as an entire contract, and it appears that their engagements would not have been entered into except upon the clear understanding that the full object of the contract should be performed, it is not a divisible contract, and the contracting parties will not be allowed, under those circumstances, to perform part of the contract and default in its other parts without being held answerable for the performance of the entire contract.

[2] ID.—AGREEMENT TO SUPPLY OIL FOR CURRENT USE AND STORAGE— DIVISIBILITY OF—INTENTION OF PARTIES.—In this action involving the construction of a contract under which an oil company agreed

―――――――――

1. Contract for sale of goods as entire or divisible, note, 2 A. L. R. 643.

to supply a railroad company with fuel oil for current use and for storage, considering the situation of the parties and the object of the original contract and of the supplemental agreement under which the railroad company made certain advances on account of the fuel oil supplied for storage that the oil company might develop its properties that oil both for current use and storage oil might be produced, it was plain that the intention of the parties was to treat the contract as a whole, and that they would not have entered into one part of the contract on the terms therein specified had it not contained the other part.

[3] Id.—Advances on Account of Oil to be Supplied for Future Use—Default by Oil Company — Right of Recoupment as Against Assignee.—The railroad company, pursuant to such supplemental agreement, having made the advances to the oil company on account of the fuel oil to be supplied for storage, but the latter having defaulted in the performance of that part. of its contract, the railroad company had the right to recoup itself, as against the claim of the assignee of the oil company for oil supplied for current use, to the extent of such advances, notwithstanding the default was not made until subsequent to the receipt by the railroad company of notice of the assignment.

[4] Id.—Notice to Assignee of Supplemental Agreement and Advances Thereunder—Estoppel of Railroad Company to Claim Right to Recoupment.—The railroad company was not estopped to claim the right to recoup itself because of the fact that, upon receiving notice of the assignment of the claim of the oil company, it did not notify the assignee that it had a claim, or intended to make a claim, against the oil company because of the advances made by it under the supplemental agreement on account of the oil to be supplied for storage, where the circumstances were such that it had a right to assume that such assignee was fully informed of the supplemental agreement under which such money was advanced and it had no knowledge or notice that such assignee had advanced or intended to advance to the oil company any money on the shipments of oil for current use.

[5] Estoppel—Knowledge of Facts—Burden of Proof.—Before such assignee could successfully urge such estoppel, the burden was on it to show that it was not only destitute of knowledge of the real facts, but that it was without convenient or ready means of acquiring such knowledge.

[6] Id.—Duty to Inform of Real Facts.—No estoppel arises where a party setting it up is under as great obligation to inform the person sought to be estopped of the real facts as the latter is to · inform himself.

[7] Id.—Essentials of—Effect of Silence.—In order to constitute an estoppel it must be shown that there was an intentional and deliberate declaration, act, or omission on the part of the party

sought to be estopped. There must be an intentional deceit or gross negligence shown, and if silence is relied upon to constitute the estoppel, such silence must be willful or culpable and result in another placing himself in an unfavorable position on the faith in or understanding of a fact which the person remaining silent can contradict; but where there is no duty to speak, mere silence will not create an equitable estoppel.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge. Reversed.

The facts are stated in the opinion of the court.

Fred E. Pettit, Jr., Dana T. Smith, E. E. Bennett and A. S. Halsted for Appellant.

A. A. De Ligne, Geo. E. Whitaker, T. N. Harvey and Raymond Benjamin for Respondent.

KNIGHT, ·J., *pro tem.*—This action was originally commenced by the Kern Valley Bank. Prior to trial W. R. Williams, superintendent of banks, was substituted as plaintiff, he then having charge of the affairs of said Kern Valley Bank for the purposes of liquidation. Later Williams was succeeded as superintendent of banks by Charles F. Stern, and the latter was thereupon substituted as plaintiff and respondent. The action concerns the sale and delivery of oil. Judgment was rendered in favor of plaintiff and against defendant San Pedro, Los Angeles and Salt Lake Railroad Company for the sum of $8,926.35, plus $5,908.25 interest from which judgment said defendant Railroad Company ap-. peals.

The facts are substantially without conflict, and are as follows: On July 1, 1907, defendant Sunset Road Oil Company, a corporation, and its subsidiary corporation, Operators Oil Company, contracted in writing with the defendant San Pedro, Los Angeles and Salt Lake Railroad Company to sell and deliver to the latter all oil required for the use of said railroad company for a period of five years, two hundred thousand barrels of which was to be stored prior to January 1, 1908, and the remainder to be delivered to and used by said Railroad Company for current use. Payments were to be made not later than the 15th of each calendar month for all deliveries made during the preceding

calendar month. Said contract also contained provisions relating to the character of oil, the temperature deductions, etc. Later said contract was supplemented by two other agreements, the first of which is not material here. The second was executed February 4, 1908, and by proper recitals was made a part of the original contract. The two important features of the second supplemental agreement were, first, the postponement of the date for the commencement of the delivery of the storage oil until April 1, 1908, deliveries to be made thereafter daily at the rate of not less than three or more than ten carloads per day until the full amount of said storage oil was delivered; secondly, the acknowledgment by said oil companies of the payment to them by said Railroad Company of the sum of sixty thousand dollars on account of future deliveries of storage oil. It was also provided in said second supplemental agreement that all payments for current use oil delivered after April 1, 1908, should be paid for in accordance with the provisions of the original agreement, that is, not later than the 15th of each calendar month.

On April 8, 1908, said oil companies assigned the payments due them under said contract to the Kern Valley Bank, in consideration for which said bank agreed to and afterward did advance to said oil companies the sum of twenty-five cents a barrel on all oil shipped to said Railroad Company. At the time of said assignment said bank had no knowledge of the existence of said second supplemental agreement, nor of the payment to said oil companies by said Railroad Company of said sum of sixty thousand dollars, its knowledge of the transaction between said oil companies and said Railroad Company being confined to the contents of the original agreement. Notice of said assignment was given to said Railroad Company by means of a letter, written on April 8, 1908, by the representative of said oil companies to said Railroad Company, in the form following: "Please pay to the Kern Valley Bank of Bakersfield, California, at due dates, the proceeds of all oil heretofore shipped to you by us and that may be hereafter so shipped, terms our contract with you. This order to remain in full force and effect until revoked by us with the consent of said Kern Valley Bank. Please make formal acknowledgment of the within order to the Kern Valley Bank and oblige."

Said Railroad Company replied by letter to said notice, and after acknowledging receipt of said letter of April 8th, stated: "I am returning this order herewith under advice of our Legal Department, for necessary correction. We cannot accept any orders for 'future payments'; in other words, a separate order should be given covering each month's voucher, and sufficient identification carried in the order with reference to your invoices as to distinctly identify the payments. . . . If you will kindly arrange to take action as suggested above I will in the meantime issue instructions that vouchers be rendered to your company for payment through the Kern Valley Bank. In the meantime please let me have corrected order covering payment for month of April, and let future orders come in as suggested."

Said Railroad Company received no notice whatever from said bank concerning said assignment, nor did it have knowledge at any time of the existence of the agreement made by the bank with said oil companies, or of the advancements made or to be made by said bank of twenty-five cents a barrel on all oil shipped to said Railroad Company.

On April 15 and 16, 1908, said Railroad Company paid to said bank, on invoices for oil, duly assigned to said bank by having stamped twice thereon the words "Payable to the Kern Valley Bank, Bakersfield," the sums of $1,634.78 and $2,685.07, respectively, which payments were in full for all current use oil delivered prior to March 31, 1908. On May 22, 1908, said bank made demand upon said Railroad Company for payment of oil delivered subsequent to April 11, 1908, to which said Railroad Company replied by letter on May 28, 1908, to the effect that said oil companies had defaulted in their contract and that there was nothing due said oil companies.

On November 5, 1910, this action was commenced for an accounting, to ascertain the amount of oil delivered under said contract, and to obtain a judgment against said Railroad Company for the amount of oil delivered, and also to obtain a judgment against the defendant Sunset Road Oil Company for the difference between the amount found to be due from said Railroad Company and the amount advanced by said bank to said oil companies. Said oil companies delivered no storage oil whatever, nor did they deliver current use oil of the quality or in the quantity re-

quired, said Railroad Company being obliged to purchase seventy-five per cent of its current use oil from outside sources. Neither did said oil companies ever repay to said Railroad Company any part of said sum of $60,000, but against that sum said Railroad Company has allowed a credit of $10,905.23 for current use oil delivered subsequent to April 1, 1908, and for which no payment had been made.

The complaint alleges, on information and belief, that the total value of the oil delivered to said Railroad Company subsequent to April 11, 1908, was approximately $15,000, of which said bank advanced the sum of $14,125, and that $4,309 has been paid, leaving a balance due of $11,000, or thereabouts. The defendant Sunset Road Oil Company defaulted. The defendant Railroad Company answered by joining issue as to the value of the total shipments of oil, the amount claimed to have been advanced by said bank to said oil companies, and the assignment to said bank. It denied that it had received notice of said assignment, as alleged in the complaint, or that it had accepted or agreed to accept the same, or that it had made any payments pursuant to said assignment, but admitted that it had made payments to said bank for oil shipped prior to April 1, 1908. As a special defense it was averred that said oil companies had defaulted in the performance of their contract, by reason of which nothing was due or payable to said oil companies subsequent to April 1, 1908, at which time it was alleged said oil companies were, and that they still are, indebted to said Railroad Company, in excess of the sum of $40,000. In other words, the answer sets up, in addition to other defenses, its right to recoupment under the terms of said original and supplemental agreements. The trial court found that said Railroad Company, by reason of its conduct at the time of and subsequent to the notice of assignment, was estopped from urging its defense of recoupment, and judgment was entered in favor of plaintiff.

Two principal questions are presented by the appeal; first, whether or not appellant may recoup itself against plaintiff to the extent of its claim against plaintiff's assignor, occasioned by the total failure of said assignor to deliver storage oil paid for in full, and second, if it may so recoup itself, whether or not, under the facts shown by the record,

appellant is estopped by reason of its conduct from urging that defense.

The availability of the defense of recoupment depends primarily upon the nature of the contract. If, as contended by appellant, it is an entire contract and not a divisible one, it is quite clear that it is a proper case for recoupment. This proposition is not seriously disputed. Respondent argues that the contract is a divisible one, not that the original and the two supplemental agreements do not constitute one contract, but that the contract covers two separate obligations, distinct from each other, viz.: an agreement to deliver storage oil, and an agreement to deliver current use oil, and that since the storage oil was paid for in advance such payment cannot now be used as the foundation for recoupment in the matter of the delivery of and the payment for the current use oil.

We are of the opinion that the terms of the contract and the circumstances of its execution do not support this view. [1] The divisibility of the contract does not alone depend upon the multiplicity or the separability of the items therein, but upon the intention of the parties and the object of the contract. If it was the intention of the parties to treat the contract as an entire contract, and it appears that their engagements would not have been entered into except upon the clear understanding that the full object of the contract should be performed, it is not a divisible contract, and the contracting parties will not be allowed, under those circumstances, to perform part of the contract and default in its other parts without being held answerable for the performance of the entire contract. (2 Parson on Contracts, 9th ed., p. 517; 3 Page on Contracts, p. 2289; 6 Ruling Case Law, 858; 13 Corpus Juris, 562.)

[2] The evidence here shows that the defendant Railroad Company was in need of oil to operate its railroad. It was not in the business of buying and selling oil. The oil contracted for was purchased for its own use and consumption. It was necessary that it should be continuously supplied with oil for its immediate and future use. A supply of current use oil without a supply of storage oil would have been of little value. Both were necessary to the successful operation of its railroad business. At the time of the execution of the contract the oil fields belonging to said oil com-

panies were apparently new and undeveloped. Money was needed for their development. In order to secure the required supply of oil, either for current use or for storage, it was necessary for said Railroad Company to finance such development. This it did by advancing $60,000 to said oil companies. This sum was not advanced for the development of storage oil exclusively, nor for the development of current use oil alone, but it was advanced for the development of the production of both. It was paid for the purpose of facilitating such development, so as to insure a steady flow of current use oil as well as an accumulation of storage oil. The fact that it was agreed that said $60,000 should be applied as payment for storage oil is immaterial. It was advanced for the purpose of developing the oil properties of said oil companies, so that both oil for current use and storage oil might be produced. It is not reasonable to suppose that said railroad company would have advanced the sum of $60,000 without feeling assured that it was going to be furnished with current use oil during the five-year period covered by the contract, as well as with the storage oil. On the other hand, it is apparent that said oil companies would not have taken a contract to furnish current use oil alone at the price agreed upon without the privilege of also furnishing the additional two hundred thousand barrels of storage oil. Nor would they have entered into the second supplemental agreement to furnish the current use oil if said $60,000 had not been advanced. It will thus be seen that the obligations of the contract to furnish storage oil and current use oil cannot be separated. The contract provided that "all oil required to be used during said term [five years] by the buyer for all its purposes," etc., should be furnished. These reasons make it plain to us that the intention of the parties was to treat the contract as a whole, and that the payment of said sum of $60,000 was made and accepted by the parties accordingly.

[3]  We have then a case where the cause of action of the plaintiff on the assigned demands for the delivery of current use oil, and the right of the defendant to recoup on account of the $60,000 advanced to plaintiff's assignor for development purposes, grew out of and had their origin in the same subject matter and in the same contract. Under such circumstances recoupment was proper. (*American Bridge Co.*

v. *City of Boston,* 202 Mass. 374, [88 N. E. 1089] ; *Rockwell*
v. *Daniels,* 4 Wis. 452; *Newfoundland* v. *Newfoundland Ry.
Co.,* L. R. 13 App. Cas. 199; *Salt Fork Coal Co.* v. *Eldridge
Coal Co.,* 170 Ill. App. 268; *Seibert* v. *Dunn,* 216 N. Y. 237,
[110 N. E. 447] ; 34 Cyc. 623, 625, 643, 376, 695.)

In respondent's brief numerous authorities are cited on
this point. It is unnecessary to discuss them, however, more
than to say that they are based upon the theory that the
contracts under consideration in those cases were divisible,
which, as we have seen, is not the case here.

The exact time when said oil companies breached their
contract, whether it was prior or subsequent to the notice
of assignment can make no difference so far as the ap-
plication of the doctrine of recoupment is concerned. If
we were here dealing with the question of setoff instead of
that of recoupment a different rule would doubtless prevail.
There is a marked difference between the two doctrines.
The chief distinctions are that the former is a creation of
statute, while the latter existed at common law; and that
the former is applicable when there are different contracts,
while the latter flows from the same contract as that which
forms the foundation of plaintiff's claim. If the breach
here occurred prior to the notice of assignment there would
be no question but that the assignee took the rights of the
assignor subject to all equities, setoffs, and other defenses
then existing. (Sec. 368, Code Civ. Proc.) A complete
breach did not occur, however, until the last days of April
or early in May, 1908, which was subsequent to the notice
of assignment. In the contract it was provided that deliv-
eries of storage oil should commence on April 1, 1908, and
that the failure by the sellers to load cars for more than
ten consecutive days should not be considered a breach of
said agreement, but that, in case of such failure to load the
same, the party in default should be required to fully make
up the deficiency within twenty days, which allowed said
oil companies until the end of April before they were com-
pletely in default. During the last days of April or early
in May, however, the representative of the Railroad Com-
pany called personally on the representatives of the oil com-
panies to ascertain what said oil companies intended to do
about fulfilling their contract, at which time the representa-
tives of the oil companies stated: "We can't furnish the oil

either in the quantity or quality stated in the contract, and we will have to quit—throw it up." . This constituted a complete breach of the contract, and it having occurred subsequent to the notice of assignment, and the action of the assignee having been commenced subsequent to such breach, the Railroad Company was given the right to recoup as against plaintiff's assignor to the extent of its claim arising because of such breach.

This rule of law is best illustrated by the case of *American Bridge Co.* v. *City of Boston, supra,* wherein a contractor, on April 10, 1902, assigned certain payments due him to a bank, notice of which assignment was given on November 14, 1902. A few days subsequent to the notice of assignment the assignor abandoned the contract. Action was brought on the assignment in October, 1906. The defendant pleaded recoupment on account of the damage suffered by reason of the breach of the contract. It was held that although the breach occurred subsequent to the notice of assignment recoupment was a proper defense. The decision in that case is based upon the ground that the right of the defendant to claim damages for the nonperformance of the contract existed at the time of the making of the contract, at the time of assignment, and at the time of the notice of assignment, and that the assignees knew it, and they also knew it would become available to the defendant the moment the assignor should commit a breach. It is further stated in the opinion in that case that even if the sums sued upon were due at the time of the notice of assignment, still, if the action was brought by the assignor after default, there could be no doubt that the defendant would have the right to recoup damages suffered by such default, the court saying, "And the assignees who seek to enforce this claim can stand in no better position in this respect than the assignor. The defendant is simply trying to enforce a right existing under the contract at the time of the notice, a right of which the assignees had knowledge; and since they have delayed suit for these sums until after default, the defendant may recoup against them as it could have recouped against the assignor."

Neither is the situation changed by the fact that the bank did not know of the existence of the second supplemental agreement at the time of said assignment. As assignee it

took subject to all equities and defenses between the original parties to the agreement existing at the time of the assignment. Those rights were not confined to those parts of the contract known to the assignee, but they embraced the equities and defenses covered by the entire contract. (*Fleming* v. *Law*, 163 Cal. 227, [124 Pac. 1018]; *San Jose Ranch Co.* v. *San Jose Land Co.*, 132 Cal. 582, [64 Pac. 1097]; 5 Corpus Juris, 963, note 28.)

In view of the authorities above cited it is our opinion that appellant should not have been deprived of its right to recoup, unless it was estopped from doing so by its acts and conduct.

[4] The facts upon which the doctrine of estoppel was applied against appellant have already been related in the first part of this opinion. In this respect it is contended by respondent that, on April 8, 1908, when appellant was notified of the assignment to the bank, appellant should have notified the bank that it had a claim, or intended to make a claim, against said oil companies because of the payment of said sum of $60,000; that instead of doing so it sent the assignment back to the oil companies for corrections as to the form of the assignment, and with instructions as to how the assignment should be drawn in the future; that the bank thereafter, acting in pursuance of these instructions, presented future assignments to appellant, which appellant accepted, and on April 15 and 16, 1908, made payments to the bank for current use oil in the aggregate sum of $4,328.85. From these facts respondent argues that the bank was lulled into a state of financial security and encouraged to make the advances to said oil companies.

The weakness of respondent's whole contention is, however, that the bank did nothing and said nothing which would indicate to appellant that it had advanced or intended to advance to said oil companies any money on its shipments of oil. Appellant was in total ignorance of that fact. Respondent claims that that part of the oil companies' letter of April 8, 1908, wherein it was stated, "This order to remain in full force and effect until revoked by us with the consent of said Kern Valley Bank," was of itself sufficient notice that the rights of the bank were absolute. While the language quoted may have indicated in a vague fashion that the bank had some interest in said payments which

could not be canceled without its consent, the letter does not carry the effect contended for by respondent. On the contrary, the letter as a whole appears to be only a direction to make payments to said bank, without disclosing any interest which the bank may have had. It does not even state in positive terms that an assignment had been actually made, and there is nothing contained in the letter from which it can even be inferred that the bank was making advances to said oil companies on shipments of oil to appellant. If any assignment can be inferred from said letter at all it could with more assurance be assumed therefrom that the assignment was made in satisfaction of or to apply upon a past indebtedness, or that it should apply upon some particular trust, or that the bank was acting as a depositary for said oil companies merely for the purpose of receiving the funds. The fact that appellant did not assume the burden of fully informing said bank of the extent of its dealings with said oil companies does not create the barrier of an estoppel. It had the right to assume that the bank was fully informed as to the second supplemental agreement and of the payment of said sum of $60,000, when it is taken into consideration that one of the directors of said bank was the general manager of one of said oil companies and the president of the other during all of these transactions.

[5] Before respondent can successfully urge estoppel it must be shown that respondent was not only destitute of knowledge of the real facts, but that it was without convenient or ready means of acquiring such knowledge. (*Murphy* v. *Clayton*, 113 Cal. 153, [45 Pac. 267]; *Huse* v. *Den*, 85 Cal. 390, [20 Am. St. Rep. 232, 24 Pac. 790]; 16 Cyc. 738.)

[6] No estoppel arises where a party setting it up is under as great obligation to inform the person sought to be estopped of the real facts as the latter is to inform himself. (16 Cyc. 741.) It is plain to be seen that had said bank made such inquiries as the law enjoined upon it to make prior to or at the time of said assignment the present controversy would not have arisen. Nor does the fact of the payments by said Railroad Company to said bank, on April 15 and 16, 1908, justify an estoppel. Those payments covered deliveries of current use oil made prior to April 1, 1908, which was eight days prior to the so-called notice of assignment. [7] In order to constitute an estoppel it must

be shown that there was an intentional and deliberate declaration, act, or omission on the part of the party·sought to be estopped. There must be an intentional deceit or gross negligence shown (*Lackmann* v. *Kearney,* 142 Cal. 112, [75 Pac. 668]), and if silence is relied upon to constitute the estoppel, such silence must be willful or culpable and result in another placing himself in an unfavorable position on the faith in or understanding of a fact which the person remaining silent can contradict. (*Eltinge* v. *Santos,* 171 Cal. 278, [Ann Cas. 1917A, 1143, 152 Pac. 915].) But where there is no duty to speak mere silence will not create an equitable estoppel. (*Winans* v. *Sierra Lumber Co.,* 66 Cal. 61, [4 Pac. 952]; *Lux* v. *Haggin,* 69 Cal. 255, [4 Pac. 919, 10 Pac. 674].)

Under the facts above related, and in view of the authorities cited, it is our opinion that the doctrine of equitable estoppel does not apply.

Judgment reversed.

Waste, P. J., and Richards, J., concurred.