[Civ. No. 4686.   Fourth Dist.   Feb. 24, 1955.]

GEORGE E. CROTHERS, Appellant, v. GENERAL PE-
TROLEUM CORPORATION (a Corporation) et al.,
Respondents.

Henry C. Clausen and Richard G. Burns for Appellant.

D. W. Woods and Martin J. Weil for Respondents.

MUSSELL, J.—This is an action in which plaintiff seeks to establish his right to 1 per cent of all oil and gas produced from land in Fresno County. A jury trial resulted in a verdict for plaintiff and thereafter the trial court granted defendants' motion for judgment notwithstanding the verdict. Plaintiff appeals from the judgment entered upon the granting of this motion.

On August 28, 1908, four certificates of purchase issued by the registrar of the State Land Office and each covering 40 acres of land involved herein were assigned to Standard Investment Company, a corporation, hereinafter referred to as "Standard." On October 18, 1918, the State of California issued patents to these parcels of real property "subject to any valid interferring rights existing at the date of selection, excepting and reserving to the United States all oil and gas deposits in the land so selected, and to it, or persons authorized by it, the rights to prospect for, mine and remove the oil and gas deposits from the same." Standard acquired the rights of the patentees and on August 10, 1921, oil and gas prospecting permit, serial number Visalia 09656, was issued to this corporation by the United States Department of the Interior. On March 15, 1923, defendant General Petroleum Corporation offered in writing to purchase from Standard the fee title and the prospecting permit on the four parcels of real property involved for the sum of $20,000 on the following basis: (1) That fee title be vested in Standard Investment Company with mineral reservation in the government free and clear of all encumbrances; (2) consent to the assignment of Standard's prospecting permit to General Petroleum's nominee; and (3) not less than a six months' extension of time on the prospecting permit from date. On March 19, 1923, this offer was accepted by Standard and in the acceptance Standard stated that application for an extension of six months' time on the prospecting permit was being made. On March 28, 1923, Standard assigned all its interest in the United States government prospecting permit to General Petroleum Corporation and on April 24, 1923, Standard deeded the property involved to General Petroleum and this deed was by its terms made "subject to the restrictions contained in the list approved by the Secretary of the Interior certifying the said lands to the State of California."

The transfer of the surface rights and the prospecting permit from Standard to General Petroleum was apparently brought about through the efforts of one Edwin G. Hammer, a broker, who testified that he "received a verbal understanding" from Mr. Hyde, who owned the Standard Investment Company, to offer the property for sale or lease; that he introduced Mr. Hyde to Mr. A. L. Weil, vice-president and general counsel for General Petroleum and that they carried on their own negotiations.

On March 15, 1923, Mr. Weil wrote to Mr. Hammer as follows:

"On consummation of the deal with Hyde, and the delivery by him to the General Petroleum Corporation of a satisfactory title to his property, the General Petroleum Corporation will pay you $1000.00 commission and two per cent (2%) royalty on the oil and gas produced from the property. This obligation to pay royalty, however, is not to control in any way our operations of the property."

On August 31, 1923, Hammer wrote General Petroleum, stating:

"With reference to the Hyde deal and your esteemed favor of the 15th of March last, being desirous of getting my affairs in order, would you kindly at your convenience send me an agreement from General Petroleum Corporation covering my two percent royalty interest in the 160 acres you acquired from Hyde, either an assignment or in some concrete form, whichever plan you deem advisable or agreeable to your good self and the Corporation."

In response to this request Mr. Weil, on September 4, 1923, replied as follows:

"This is to evidence the arrangement heretofore made with you that you are to receive two per cent (2%) royalty on the oil and gas produced from the property acquired by this company from the Standard Investment Company, and being more particularly described as follows: (Description of property.)

"The amount of royalties which you receive are to be determined on the same basis as the royalty paid to the government under the government lease.

"It is understood that this obligation arises simply out of the production of the property, and imposes no obligations whatever on the General Petroleum Corporation to operate."

On or about December 12, 1923, Hammer executed and delivered to plaintiff George E. Crothers, a former judge of the

superior court and then a practicing attorney, a "Grant and Assignment of Royalty Interest," stating therein:

"In consideration of the sum of One thousand ($1000.00) dollars and other good and valuable considerations, the undersigned, EDWIN C. HAMMER, of the City and County of San FRANCISCO, State of California, hereby grants and assigns unto GEORGE E. CROTHERS, of the City and County of San Francisco, State of California, a one per cent (1%) royalty on the gas and oil produced from the following described property: (Description of property.)

"The amount of the royalty which said George E. Crothers is to receive is to be determined on the same basis as the royalty paid to the Government under Government leases.

"It is understood that the royalty interest in the undersigned Edwin C. Hammer which is assigned and granted hereunder is a one-half interest in that certain agreement between General Petroleum Corporation and Edwin C. Hammer, evidenced by a document of which the following is a copy:" (Here follows a copy of the letter of September 4, 1923, from General Petroleum Corporation to Edwin C. Hammer.)

After receiving this assignment plaintiff Crothers had it recorded and wrote to General Petroleum notifying them as follows:

"Please take notice that the undersigned is the owner of a one per cent royalty in all gas and oil produced in the following described property: (Description of property.)

"I understand that the above described property is the property in which you acquired your interest from the Standard Investment Company and upon which you are seeking to obtain a government lease.

"I enclose herewith for your files duplicate original Grant and Assignment of said one per cent royalty interest from Edwin C. Hammer to George E. Crothers, dated, signed and acknowledged this date before Julia W. Jones, commissioned Julia W. Crum, which you will kindly keep on file in your office and make due note of the same in your records."

On December 15, 1923, General Petroleum acknowledged receipt of this letter enclosing the assignment of Hammer dated December 12, 1923.

Plaintiff testified that he did not make any check of the records of Fresno County to determine the status of the title to the property in which he was buying a royalty and did not request an abstract of title because the cost of checking might

be more than the cost of the property and that "besides he was willing to take the word of A. L. Weil and the 'Standard Oil.'" However, he further testified that he did not talk to Mr. Weil about the property or about General Petroleum's interest in it, either before or after he bought the royalty, but discussed the matter only with Mr. Hammer.

After acquiring the permit General Petroleum drilled a well on near-by property to a depth of 500 feet and later made an arrangement with an adjoining operator, known as "Snowolene," which drilled a test well on other adjoining property. Thereafter General Petroleum assigned all its rights under the prospecting permit to the Springs Company, subject to the Hammer royalty. Subsequently another well, known as the "Mitchell Well," was drilled near the property involved herein. In the latter part of 1927 the Springs Company made an investigation of the area and its general manager came to the conclusion that the wells were well placed structurally and had tested the area satisfactorily. No oil was found in paying quantities and he therefore recommended that the permit be surrendered to the United States. The Springs Company then on October 7, 1927, relinquished all of its right, title and interest in the United States oil and gas prospecting permit Visalia No. 09656 to the United States Department of the Interior. This relinquishment was accepted and the permit canceled as of October 6, 1928. Apparently nothing further was done with the land until October 1, 1941, when the United States Department of the Interior issued an oil and gas lease covering the property to one Frances Reay. On June 24, 1943, Reay assigned the lease to Loren Hillman and on February 20, 1945, Hillman assigned the lease to Standard Oil Company of California. Subsequently the Standard Oil Company, by mesne conveyances, acquired the ownership of the surface. After acquiring the lease, Standard Oil Company drilled on the property and succeeded in obtaining a producing oil well. In 1949, when plaintiff discovered that the property was producing oil, he made demand upon the defendants General Petroleum Corporation and Standard Oil Company for an amount equal to 1 per cent of the oil produced. When this demand was refused, this action was filed.

Defendant General Petroleum Corporation acquired only the surface rights to the property involved herein by the deed to it from Standard Investment Company and the grant to General Petroleum's predecessors in interest from the State

of California reserved to the United States all oil and gas in the said lands. General Petroleum also acquired an assignment of a prospecting permit issued by the Department of the Interior. It is evident that General Petroleum did not by the deed and permit acquire ownership of the oil and gas underlying the land involved. Its rights were to prospect for oil under the terms of the permit. On consummation of the deal with Standard Investment Company involving the deed and transfer of the permit, General Petroleum promised to pay Hammer $1,000 commission and 2 per cent royalty on the oil and gas produced from the property, subject to the conditions stated in the letter of Mr. Weil of March 15, 1923, that "this obligation to pay royalty, however, is not to control in any way our operations of the property." General Petroleum was not bound to operate the property and so informed Hammer in writing, not only in its letter of March 23, 1923, but also in its letter of September 4, 1923, written in response to Hammer's request for an agreement. It seems quite clear that General Petroleum promised to pay the 2 per cent royalty to Hammer only in the event General Petroleum produced oil and gas from the premises. This they did not do and the prospecting permit was surrendered after testing the area for oil production. While Hammer testified that he did not know of the existence of the prospecting permit and was informed by Standard that it owned the property, he was nevertheless bound by the statements in the letters which he received from General Petroleum. When on December 12, 1923, Hammer executed a "Grant and Assignment of Royalty Interest" and delivered it to plaintiff, he, Hammer, conveyed and assigned only such interest as he then had which was conditioned upon the drilling and production of oil and gas upon the premises by General Petroleum. Plaintiff was well aware of the contents of the letter of September 4, 1923, to Hammer from the General Petroleum Corporation for this letter was set forth in the assignment to plaintiff of December 12, 1923. Plaintiff, after recording this assignment, stated in his letter to General Petroleum as follows: "I understand that the above described property is the property in which you acquired your interest from the Standard Investment Company and upon which you are seeking to obtain a government lease." This letter clearly indicates that plaintiff understood that General Petroleum's promise to pay royalty to Hammer was not made as an owner of the underlying oil

and gas in the property but that it was seeking to obtain a government lease thereon. Furthermore, plaintiff made no effort to ascertain the condition of the title to the property, stating that the cost of an investigation would be more than he had paid for the assignment.

Appellant argues that ''The gist of the wrong here is that General Petroleum led its agent Hammer to believe it owned the oil and gas rights in the Fresno property. It then purported to transfer a 2 per cent mineral fee interest to Hammer; and Hammer in turn purported to convey the same to Judge Crothers by a 'Grant and Assignment.' Judge Crothers believed he was getting a landowner's royalty; and when he gave General Petroleum notice of his ownership, nothing was done to discourage his belief. Thus whether it be said that General Petroleum covenanted to give a landowner's royalty or fraudulently represented that it had one to give or simply is estopped to deny the fact, it is clear that justice entitled plaintiff to recovery by reason of the documents and representations together with his reliance thereon.'' We are not in accord with these contentions. The record shows that Hammer was acting for the Standard Investment Company in attempting to find a buyer or lessee of their property. There is no testimony in the record that A. L. Weil or any one else in General Petroleum informed Hammer or plaintiff that General Petroleum was the owner or lessee of the oil and gas underlying the property involved. The promise of General Petroleum to pay 2 per cent royalty was not a transfer of a 2 per cent mineral fee interest as contended by appellant. It was an agreement to pay plaintiff in the event General Petroleum produced oil and gas from the property.

The right of General Petroleum to operate the property involved by drilling for oil and gas was limited by the United States prospecting permit and ceased upon its surrender and cancellation. Hammer's right to royalty also ceased with the cancellation of this permit. In *La Laguna Ranch* v. *Dodge*, 18 Cal.2d 132, 140 [114 P.2d 351, 135 A.L.R. 546], it was held that the termination of an oil and gas lease would result in the termination of the interest created under it and in the instant case the same rule applies as to the interest created under the United States prospecting permit.

Appellant argues that it was the duty of General Petroleum to inform him that he was not acquiring a landowner's royalty by his assignment from Hammer and that General Petroleum

was estopped to deny that such a royalty was in fact acquired. ■■ However, as was said in *Stern* v. *Sunset Road Oil Co.,* 47 Cal.App. 334, 345-346 [190 P. 651]:

"In order to constitute an estoppel it must be shown that there was an intentional and deliberate declaration, act, or omission on the part of the party sought to be estopped. There must be an intentional deceit or gross negligence shown (*Lackmann* v. *Kearney,* 142 Cal. 112 [75 P. 668]), and if silence is relied upon to constitute the estoppel, such silence must be wilful or culpable and result in another placing himself in an unfavorable position on the faith in or understanding of a fact which the person remaining silent can contradict. (*Eltinge* v. *Santos,* 171 Cal. 278 [152 P. 915, Ann.Cas. 1917A 1143].) But where there is no duty to speak mere silence will not create an equitable estoppel. (*Winans* v. *Sierra Lbr. Co.,* 66 Cal. 61 [4 P. 952]; *Lux* v. *Haggin,* 69 Cal. 225 [4 P. 919, 10 P. 674].)"

■ In the instant case plaintiff had a ready means of ascertaining the facts and there is nothing in the record to indicate that he sought information from General Petroleum as to its interest in the property. General Petroleum's dealings were with Hammer and not plaintiff and it had no duty to inform plaintiff as to his rights under his assignment. As was said by this court in *C. I. T. Corp.* v. *Hawley,* 34 Cal.App.2d 66, 72 [93 P.2d 216]:

"An estoppel may arise from silence as well as from words or conduct. But this is only where there is a duty to speak, and where the party upon whom such duty rests has an opportunity to speak, and, knowing that the circumstances require him to speak, remains silent. The circumstances attending the entire transaction must be such as to make it reasonably probable that the person seeking to set up the estoppel has suffered prejudice by the other's unreasonable acquiescence. There must be something wilful or culpable in the silence. (*Eltinge* v. *Santos,* 171 Cal. 278 [152 P. 915, Ann.Cas. 1917A 1143]; *Stern* v. *Sunset Road Oil Co.,* 47 Cal. App. 334 [190 P. 651]; Code Civ. Proc., § 1962, subd. 3.)"

Here, there is no substantial evidence that plaintiff suffered prejudice by unreasonable acquiescence on the part of General Petroleum and there is no evidence to indicate culpable silence on the part of the corporation or its agents. Plaintiff had only such rights as could be and were transferred to him by Hammer and the mere silence of General Petroleum did

not increase or diminish such rights under the circumstances here shown.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied March 22, 1955, and appellant's petition for a hearing by the Supreme Court was denied April 20, 1955. Carter, J., was of the opinion that the petition should be granted.