JOHN S. SEIBERT, Respondent, *v.* BART DUNN, Appellant.

Counterclaim — recoupment — when claim which might have been set up as a recoupment under the common law, may be interposed as a counterclaim in an action on an assigned claim.

1. The counterclaim created by our statutes embraces, at law exclusively, and is broader and more comprehensive than recoupment and set-off. Those statutes (Code Civ. Pro. §§ 500-513) prescribe and define the fabric and regulate the exercise of a counterclaim.

2. The doctrines of set-off and recoupment promote justice and diminish circuity of litigation. Courts and legislatures deem them remedial in character, and the rules creating and regulating them are entitled to a construction fairly liberal. Under the rule relating to recoupment (Code Civ. Pro. § 501) an assigned claim is subject to the right of the debtor to claim damages for a violation, prior to its enforcement, by the assignor of his obligation. The assignee, in suing the claim, stands in the place of the assignor, succeeding to the benefits it might bring, but chargeable to the extent of it with the liabilities of the assignor arising from his default, or in exact language the assignee represents the assignor in regard to the claim.

*Seibert* v. *Dunn*, 157 App. Div. 387, reversed.

(Argued October 18, 1915; decided November 16, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 20, 1913, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frederick Hulse* for appellant. It was error to direct a verdict in favor of the plaintiff. The defendant had a right, under the Code, to set off against the plaintiff's claim the damage he suffered by reason of the brick company's refusal to carry out its contract. (Code Civ. Pro. § 502, subd. 1; *Caspary* v. *Hatch*, 157 App. Div. 679; *Cunningham* v. *Morrell*, 10 Johns. 202; *Pakas* v. *Hollingshead*, 184 N. Y. 211, 214; *Catlin* v. *Tobias*, 26 N. Y. 217; *Baker* v. *Higgins*, 21 N. Y. 398; *Mount* v. *Lyon*, 49 N. Y. 552; *People* v. *Grout*, 179 N. Y. 417, 426; *Nichols* v. *S. S. Co.*, 137 N. Y. 471; *Miller* v. *Leo*, 35 App. Div. 589; 165 N. Y. 619; *Norrington* v. *Wright*, 115 U. S. 188; *Loudenback Fertilizer Co.* v. *Tenn.*, 121 Fed. Rep. 298.)

*George W. Field* and *Frank H. Platt* for respondent. Defendant's demand against the brick company did not exist at the time of the assignment of plaintiff's claim by the brick company. Defendant's demand may not, therefore, be allowed as a counterclaim against plaintiff as assignee. (*Weniger* v. *Fourteenth St. Store*, 191 N. Y. 423; *Lauer* v. *Dunn*, 115 N. Y. 405; *Martin, Bing & Co.* v. *County of Westchester*, 57 App. Div. 135; *Conselyea* v. *Blanchard*, 103 N. Y. 222; *Vassaer* v. *Livingston*, 13 N. Y. 248; *Wiltsie* v. *Northam*, 3 Bosw. 162; *Central Trust Co.* v. *Weeks*, 15 App. Div. 598.) The rule that the counterclaim must exist at the time of the assignment applies regardless of the time when the assigned claim becomes payable. (*Lauer* v. *Dunn*, 115 N. Y. 405; *Myers* v. *Davis*, 22 N. Y. 489; *Martin* v.

*Kunzmuller*, 37 N. Y. 396; *Fera* v. *Wickham*, 135 N. Y. 223; *Knight* v. *Rothschild*, 132 App. Div. 274; *Matter of Hatch*, 155 N. Y. 401; *Silver* v. *Krellman*, 89 App. Div. 363.) The fact that the counterclaim arose out of the contract under which the brick sued for were delivered does not make this case an exception to the rule that the counterclaim must have been in existence at the time of the assignment. (*Deeves* v. *Manhattan Life Ins. Co.*, 195 N. Y. 324; *Krom* v. *Levy*, 1 Hun, 171; *Raymond* v. *Hogan*, 10 App. Div. 189.)

COLLIN, J. The action is by an assignee of a claim for a sum of money, which arose under a contract between the defendant and the Eastern Paving Brick Company, a corporation, to recover the sum assigned. The defendant sought by his answer and upon the trial to defeat a recovery, through proof that after the sum demanded by the plaintiff had been assigned by the corporation, the corporation violated the contract under which the sum became payable and thereby caused the defendant damages in a sum greater than the sum claimed by the plaintiff. The trial court held that the defendant could not by such proof defeat the recovery, because the claim of the defendant for his damages did not exist against the corporation at the time it assigned the claim, and directed a verdict for the plaintiff for the sum claimed. The Appellate Division affirmed the judgment.

The cardinal facts, as settled by the verdict, out of which the question arises here are: In July, 1900, the corporation and the defendant entered into a contract in writing whereby the former sold the latter all the vitrified bricks requirable by him for the construction of designated sewers, deliverable as he ordered, at a designated price for each thousand used in the construction, and the latter agreed to pay, about the fifteenth of each month, "ninety per cent of the monthly estimate or certificate showing the quantity of brick laid during the

preceding month " given by the engineer, and the remaining ten per cent in thirty days after the last delivery of the bricks ordered. In June, 1901, the corporation assigned to plaintiff's assignor the sum payable for bricks then delivered, and which became due by virtue of the certificate of the engineer about August 18, 1902. About July, 1902, the corporation ceased delivering bricks, leaving the contract in large part unfulfilled and causing the defendant damages in a sum exceeding that assigned to the plaintiff. The defendant asserts, as he has from the commencement of the action, that the damages caused him by the corporation should be applied, as a counterclaim, in the cancellation of the plaintiff's claim. The action was commenced in October, 1906.

The defense which the defendant adduces was, prior to the adoption of the Code, denominated recoupment. It enabled a defendant to abate, while admitting, a right of recovery of a plaintiff, in the sum of the damages (or a sum thereof equal to plaintiff's claim), sustained by the defendant because of a violation by the plaintiff of a legal right of the defendant springing from the contract or transaction sued upon. The law cut off so much of the plaintiff's claim as the damages of the defendant came to. Although consisting of a distinct cause of action in favor of a defendant, it was not identical with, though closely related to, the statutory defense of set-off, from which it differed in several particulars. It sprang from a violation by the plaintiff of a legal right of the defendant created by the contract or transaction upon which the suit was brought and might not be a demand independent of such contract or transaction; it was a rule of the common law and not the creation of a statute; the fact that the damages of the defendant were unliquidated did not bar its operation; and a defendant could not have a judgment for the sum in which his damages exceeded those of the plaintiff nor could he maintain a subsequent action for such balance — a particular which may or may

not, as a statute declares, be true of set-off. (*Batterman* v. *Pierce*, 3 Hill, 171; *Whitbeck* v. *Skinner*, 7 Hill, 53; *Nichols* v. *Dusenbury*, 2 N. Y. 283; *Gillespie* v. *Torrance*, 25 N. Y. 306; *Frick* v. *White*, 57 N. Y. 103; *Martin* v. *Kunzmuller*, 37 N. Y. 396.)

The counterclaim created by our statutes embraces, at law exclusively, and is broader and more comprehensive than recoupment and set-off. Those statutes prescribe and define the fabric and regulate the exercise of a counterclaim. (Code of Civil Procedure, §§ 500–513; *Deeves & Son* v. *Manhattan Life Ins. Co.*, 195 N. Y. 324; *Vassear* v. *Livingston*, 13 N. Y. 248; *Fulton County G. & E. Co.* v. *Hudson River T. Co.*, 200 N. Y. 287.)

Those statutes provide: "The counterclaim   *   *   *, must tend, in some way, to diminish or defeat the plaintiff's recovery, and must be one of the following causes of action against the plaintiff, or, in a proper case, against the person whom he represents, and in favor of the defendant, or of one or more defendants, between whom and the plaintiff a separate judgment may be had in the action: 1. A cause of action arising out of the contract or transaction, set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action.   2. In an action on contract, any other cause of action on contract, existing at the commencement of the action." (Code Civ. Pro. § 501.)   Section 502 of the Code declares rules expressly relating only to a counterclaim specified in subdivision second of section 501 and need not be here set forth.   Section 503 provides that where an established counterclaim equals the plaintiff's demand the judgment must be for the defendant; where it is less, the plaintiff must have judgment for the residue only, and where it exceeds the plaintiff's demand, the defendant must have judgment for the excess, "or so much thereof as is due from the plaintiff."   From the facts as already stated, it is fairly apparent that the claimed counterclaim here is not within the second subdivision of

section 501. It arose out of the contract set forth in the complaint as the foundation of the plaintiff's claim, to wit, the contract of July, 1900. The contract discloses with clarity and certainty that it was an entire and not a divisible contract. Full and complete performance on the one side constituted the consideration for performance on the other. The corporation was bound to deliver all the vitrified brick which the construction required. The subsidiary stipulations as to delivering them as ordered and as to paying for the quantity laid monthly do not split the contract into as many distinct parts or contracts as there shall be shipments or payments. The payments were merely advancements upon the whole price and not ratable payments for the performance of distinct parts. (*Norrington* v. *Wright*, 115 U. S. 188; *Pakas* v. *Hollingshead*, 184 N. Y. 211; *Barrie* v. *Earle*, 143 Mass. 1; *Olmstead* v. *Bach*, 78 Md. 132; *Prautsch* v. *Rasmussen*, 133 Wis. 181.)

The alleged counterclaim, if lawful and established, would defeat the plaintiff's recovery. We are, therefore, brought, by the language of section 501, against the question, was it, as a cause of action, against the person whom the plaintiff represents. The common law, as generally administered, would have permitted the defendant to recoup. In *Rockwell* v. *Daniels* (4 Wis. 432) Rockwell, originally the defendant, but plaintiff in error upon appeal, agreed to pay in installments $100 to Daniels and Hemmenway, in consideration of their agreement to erect a mill of designated capacity within one year from July 26, 1851. Within the year, Daniels and Hemmenway assigned the agreement (with others) to one Young, the real plaintiff in interest in the action which was brought for his use, and gave Rockwell notice of the assignment. Daniels and Hemmenway did not erect the mill as agreed. The action was to recover the unpaid part of the $100. Rockwell sought to recoup his damages from such non-performance. The trial court

ruled that the assignment to Young before the failure of performance barred the recoupment. The Supreme Court in reversing, after stating that the assignment disclosed to Young the consideration for the agreement of Rockwell to pay the $100, said: " The right of the defendant to recoup in case the plaintiffs should fail to perform their contract, and should sue him on his subscription, was the law of its transaction from its inception. It existed at the making of the contract, and at the time of its assignment, and the assignee had notice of that equitable right, and that it would become available to the defendant the moment the plaintiffs should commit a breach, and Young took it subject to such equity; and though he might probably have defeated that equity, after the extension (of time of performance), by bringing suit before breach, yet he could not extinguish it. But having delayed the suit until the breach had occurred on the part of the plaintiffs, and the right of recoupment had passed from an inchoate into an operative or vital existence, he cannot now divest his subscription from the rights and equities which originally attached to it, ripened and matured as they are by his own delay." In *American Bridge Co. of New York* v. *City of Boston* (202 Mass. 374) one Coburn agreed with the city of Boston to construct two public buildings. April 10, 1902, when the buildings were in the course of construction, Coburn assigned to the plaintiffs " the moneys now due or which may hereafter become due " on account of the construction. November 10, 1902, the architect gave the two certificates, for the sums of which the action was brought in October, 1906. Coburn defaulted in performance after the city of Boston had, on November 14, 1902, notice of the assignment. The trial court refused recoupment to the defendant. The Supreme Court reversed and said: " At the time of the notice what were the rights between him (Coburn) and the defendant, so far as respects this contract ? He was entitled to receive these sums, but he was also under an obligation

to complete his contract. This right of the defendant to claim damages for the non-performance of the contract existed at the making of the contract and at the time of assignment and of notice, and the assignees knew it, and they also knew that it would become available to the defendant the moment the assignor should commit a breach. Under these circumstances it must be held that the assignees took subject to that right. * * * Even if the sums were due and payable in November, 1902, at the time of the notice, still, if this action had been brought by the assignor after the default, there can be no doubt that the defendant would have had the right to recoup the damages suffered by his default. And the assignees who seek to enforce this claim can stand in no better position in this respect than the assignor." The principle is likewise declared and applied in *Salt Fork Coal Co.* v. *Eldridge Coal Co.* (170 Ill. App. 268); *Parsons* v. *Sovereign Bank of Canada* (L. R. [1913] A. C. 160); *Government of Newfoundland* v. *Newfoundland Railway Co.* (L. R. [13 App. Cas.] 199). In the present case the question as to whether or not notice of the assignment by the corporation or its assignee was given the defendant was not litigated or decided. We shall, therefore, assume, and a reading of the evidence confirms the justice of the assumption, that the commencement of the action first gave such notice.

The first Code — the Code of Procedure — that of 1848–1849 (Laws of 1848, chap. 379; Laws of 1849, chaps. 136, 439), as originally enacted, in its sections 149, 150 (the originals of sections 500, 501), 111, 112, did little more, in matter of substance, than declare the then existing rules relating to the defenses of set-off and recoupment. In 1852 section 150 was amended (Chap. 392) so that the first paragraph of it read: "The counterclaim mentioned in the last section, must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising

out of one of the following causes of action;" and was followed by subdivisions 1 and 2 in their present form, except a few verbal changes in improvement of the language. We held that the provision just quoted was precise and unyielding, except as it might be qualified by the language of section 112 relating to an action by an assignee, and that recoupment must be based upon a cause of action against the plaintiff. (*Merrick* v. *Gordon*, 20 N. Y. 93.) In the new revision of the statutes the Code of Procedure became ultimately the Code of Civil Procedure and its section 150 became section 501, and contained the words thereby enacted, "or, in a proper case, against the person whom he represents." (Laws of 1876, chaps. 448, 449, section 501.)

The doctrines of set-off and recoupment promote justice and diminish circuity of litigation. Courts and legislatures deem them remedial in character and the rules creating and regulating them entitled to a construction fairly liberal. The words of section 501, now under consideration, should not be given an interpretation depriving the defendant of a recoupment, which, as stated, the common law would have sanctioned, unless they under such construction compel it. The common-law rule rested upon the principle that the assignee was notified by the assignment that the assigned right sprang from a contract entered into by and obligating the assignor, that the obligation of the debtor to pay was based upon the obligation of the assignor a violation of which would entitle the debtor to the right of recoupment, and the assignee occupied, as to the assigned claim, the place and position of the assignor — at least as to rights accruing prior to a notice to the debtor of the assignment. The assigned claim, in judgment of law, was subject to the right of the debtor to claim damages for a violation, prior to its enforcement, by the assignor of his obligation. The assignee, in suing the claim, stood in the place of the assignor, succeeding to the benefits which it might bring,

but chargeable to the extent of it with the liabilities of the assignor arising from his default, or in exact and ordinary language the assignee represented the assignor in regard to the claim. One who occupies another's place and succeeds to his beneficial rights in such way that he may also in some degree be charged with his liabilities represents him. (Cent. Dict. under "Representative;" *G. G. R. R. & B. Co.* v. *Bryan*, 8 Smedes & Mars. [Miss.] 234, 275; *Lee* v. *Dill*, 39 Barb. 516.)

In the present case, the assignments under which the plaintiff owned the claim in question recited the existence of the contract of July, 1900, the delivery of bricks in pursuance of it, and the balance, in the assigned sum, unpaid on account of them. Under the principles and decisions stated, the judgment should be reversed and a new trial granted, with costs to abide the event.

We have not considered and express no opinion in regard to the effect of a notice to the defendant of the assignment of the claim.

WILLARD BARTLETT, Ch. J., HISCOCK, HOGAN, CARDOZO, SEABURY and POUND, JJ., concur.

Judgment reversed, etc.