165 BROADWAY REALTY CORPORATION, Landlord, *v.* WEBER AND HEILBRONER, INC., Tenant, FASHION PARK ASSOCIATES, INC., Tenant's Assignee, " JOHN DOE 1," " JOHN DOE 2 " and " JOHN DOE 3," Said Persons Designated as " John Doe " Being Unknown to Petitioner, Persons Intended Being in Possession of the Premises Herein, Undertenants.

Municipal Court of New York, Borough of Manhattan, First District, April 30, 1932.

Jonas & Neuburger [*David Barnett* of counsel], for the landlord.

Maas & Davidson [*Herbert H. Maas* and *Wilbur C. Davidson* of counsel], for tenant and tenant's assignee.

SHALLECK, J. These are two summary proceedings instituted by the landlord against the tenant and the tenant's assignee for non-payment of rent; one in the sum of $10,416.65 affecting a store at 10 Cortland street, and the other in the sum of $12,500 affecting a store at 179 Broadway in the city of New York, making a total of $22,916.65.

The tenant and its assignee concede all the allegations of fact contained in the petition, but interpose as a defense an offset for $50,000, claiming that said $50,000 is a balance due them by virtue of certain agreements made with the former landlord, Benenson City Terminal Corporation, which modified the then existing leases.

The tenant and its assignee are in possession of the demised premises pursuant to two leases, both made in 1925, which leases were assumed by the tenant's assignee prior to April 1, 1930. On April 1, 1930, the Benenson City Terminal Corporation was the owner in fee of said premises, and on said date as landlord the said Benenson City Terminal Corporation executed to the Manufacturers Trust Company, as trustee, an indenture of mortgage in the principal sum of $3,000,000, which was recorded on April 24, 1930, in the office of the register of the county of New York. Said indenture of mortgage mortgaged in addition to the real estate described therein all of the leases then in effect, including the two leases to the tenant herein. Thereafter, on October 31, 1930, the then landlord, the Benenson City Terminal Corporation, the tenant and the tenant's assignee herein executed three agreements. The first agreement consisted of seventeen closely typewritten pages and modified the original leases so that the landlord received the option and privilege, at its own election, to terminate the lease upon giving the tenant six months' notice in writing of its election to so terminate said tenancy. In consideration therefor the landlord agreed to pay to the tenant $150,000 in five installments, the

first installment of $50,000 to be paid at the time of the signing of the agreement. This agreement was not recorded and will hereafter be referred to as the first long form unrecorded agreement. The second agreement was made and executed on the same date and hereafter will be referred to as the short form recorded agreement, and provided, " in consideration of the premises and of the sum of $100.00 and other valuable considerations paid by the party of the first part to the party of the second part, the receipt whereof is hereby acknowledged, the parties hereto hereby do severally and respectively covenant, consent and agree that the said leases made between * * * as landlord, and * * * as tenant, are hereby modified and amended so that said leases and each of them shall provide as follows: * * *

" ' The Benenson City Terminal Corporation, its successors and assigns, as landlord shall have the option and privilege at the election of said landlord to terminate this lease on May 1st, 1932, or at any time thereafter upon the landlord giving to the tenant, not less than six months previous, notice in writing mailed to the tenant at No. 1457 Broadway, Borough of Manhattan, City of New York, or at such other address as the tenant shall specify by written notice given to the landlord previously thereto of the intention of the landlord to terminate said lease on a day which shall be specified in said notice. Upon the giving of said notice, this lease and the term thereof shall forthwith cease, determine and end on the day specified in said notice, and the tenant agrees thereupon to yield up and surrender the premises to the landlord in the same manner provided in and by the terms of this lease, and with the same force and effect as though the date specified in said notice was the date originally specified in this lease for the expiration of the term. * * * '

" This agreement is made pursuant to and upon the terms and conditions of a written agreement of even date herewith between the Benenson City Terminal Corporation, party of the first part hereto, Fashion Park Associates, Inc., party of the second part hereto and Weber & Heilbroner, Inc., a New York corporation. *This agreement shall not be deemed in any way to modify or change the aforesaid agreement of even date between the parties hereto, and shall remain in all respects subject thereof.*"

Another agreement made and executed on the same date was merely a guaranty in writing by Grigori Benenson for the payments of the $100,000.

On February 6 and on May 6, 1931, the two installments of $25,000 each were paid; the remaining payments of $25,000 each were due on August 6 and November 6, 1931, and were not paid.

On or about May 29, 1931, the mortgagee, the Manufacturers Trust Company, as trustee, instituted foreclosure proceedings. The tenant herein was not made a party defendant to those proceedings. On June 16, 1931, the Benenson City Terminal Corporation, the then landlord, assigned the leases of the aforesaid property to the mortgagee, the Manufacturers Trust Company, as trustee. On September 29, 1931, the Manufacturers Trust Company, as trustee, purchased the premises and received a deed from the referee on the foreclosure sale on December 2, 1931. On January 26, 1932, the Manufacturers Trust Company, as trustee, conveyed the premises to the Manufacturers Trust Company and also assigned to the Manufacturers Trust Company all its right, title and interest in and to the said leases and in and to all the arrears in rent then due from the tenant and the tenant's assignee. On the same day the Manufacturers Trust Company conveyed the premises, and in turn assigned all its right, title and interest in and to the said leases and arrears in rent due from the tenant, to the present landlord, the 165 Broadway Realty Corporation.

The landlord contends that the tenant's offset of $50,000 as against its arrears for rent should not be allowed for the reason that the long form unrecorded agreement of seventeen pages of October 1, 1930, was merely a personal covenant and did not run with the land.

From the facts before me, it is immaterial whether the modification agreement did or did not run with the land. It appears clearly that the short form agreement recorded in the register's office was notice to the world that the original lease of 1925 was modified so that the landlord could cancel the entire agreement upon giving six months' notice in writing to the tenant. The landlord urges that it was under no obligation to search for any collateral agreements between a former landlord and this tenant in view of the fact that the recorded short form instrument contained the following clause: " In consideration of the premises and of the sum of $100.00 and other valuable considerations paid by the party of the first part to the party of the second part, the receipt whereof is hereby acknowledged," and that the consideration having been fully paid it had the right to assume that all payments under this agreement were made. However, in the same short form recorded agreement it appears that the said short form agreement was " made pursuant to and upon the terms and conditions of a written agreement bearing even date * * *," which refers to the first seventeen-page written agreement.

To obtain a true meaning of an agreement the entire instrument must be read as one and not a disconnected reading of separate

paragraphs. That part of the paragraph reciting " and other valuable considerations" must be interpreted to mean that the other agreement executed the same date and referred to in the same agreement was part of the " other valuable considerations." Unquestionably the recording of the short form agreement which modified the original lease of 1925 was constructive notice to the landlord of the existence of the long form agreement, and the terms and conditions therein contained. This is so because the agreement specifically sets forth the modification. A mere reading of the recorded instrument places a duty upon a subsequent purchaser to learn the substance of the other agreement or to be bound by his failure to so enlighten himself. It is conceded that this landlord had notice of both the long form agreement and the short form recorded instrument. The landlord urges, however, that there is nothing to show that the original purchaser, the Manufacturers Trust Company, as trustee, had such knowledge. This is immaterial in view of my findings that constructive notice was had.

The landlord contends that the offset did not arise out of the transaction set forth in the petition and, therefore, subdivision 1 of section 266 of the Civil Practice Act does not apply; and further contends that the tenant's offset may not be asserted because it is distinct and separate from the original lease of 1925, and that, therefore, coming within the purview of subdivision 2 of section 266 it is unavailable to the tenant because the cause of action did not arise until after the assignment. This latter contention might be so if the modification agreement were a collateral instrument to the original agreement of 1925. However, the modification agreement became part of the original leases as if the modification were inserted in the leases at the time of the execution in 1925. As specifically set forth in the short form recorded agreement, " the foregoing provision shall constitute a part of each of the aforesaid leases made respectively between * * * as landlord and * * * as tenant, with the same force and effect as if said provision were originally included therein, and except as expressly modified and amended by the foregoing, the said leases are hereby ratified and confirmed and remain in full force and effect." This being so, the offset arises out of the same contract and is directly connected with the subject of the action. Consequently, subdivision 1 of section 266 of the Civil Practice Act is applicable and the pleading of this offset is proper.

*Stafford Security Co., Inc., v. Kremer* (258 N. Y. 1), cited by the landlord to uphold his contention that the offset herein is not permissible, does not apply because the facts in that case differ from the facts in the case at bar. Here I have found that both the

petition and offset arise out of the same transaction and that sub-division 1 of section 266 of the Civil Practice Act applies. In the cited case the court said: " Nothing said in this opinion applies to a case where the counterclaim, if there had been no assignment, would fall within the provisions of subdivision 1 of section 266 [a counterclaim growing out of the same contract or transaction], and not within the provisions of subdivision 2."

Unquestionably, if there had been no assignment and the original landlord, Benenson City Terminal Corporation, had instituted these proceedings, the tenant would be permitted to offset the claim for rent by setting up the modification agreement and the breach of it by the failure to pay the final two installments there-under. If we were to permit a mere assignment to deprive a tenant of his rights of action or offset, the landlord, in order to evade the obligations of such agreement, might very easily enter into a collusive agreement with another or dummy who would collect the rent under the lease, pay it to the landlord and thus deprive the tenant of the benefits of the modification. The avenue for fraud would be broadened if such condition were recognized by a court of justice. (Let it be understood that no such claim has been entertained in the case at bar.)

The status of contracting parties is established by their mutual and reciprocal obligations and the rights and duties imposed thereby. Once established, the law does not countenance a change in such status which would result in unfair advantage to one or impose an undue burden on the other. If the present landlord believed it to be to its advantage to exercise the option of cancellation given to it by the modification agreement and tendered the $50,000 still due to the tenant under that agreement, would the tenant be permitted to resist such right by claiming that the option was personal to the original landlord and that the modification was merely collateral to and not a part of the original lease, thereby incidentally retaining for itself $100,000 already paid by the former landlord? I think not. If the landlord, its successors and assigns, complied, the tenant would be compelled to abide by the terms of the modification agreement, it being part of the original contract of lease.

The recorded instrument gave the right of option to the original landlord, " its successors and assigns, as landlord." The unrecorded instrument imposes the reciprocal obligation to pay the remaining $50,000. The recorded instrument gave the right of option to the original landlord, its successors and assigns, as landlord, and refers to the unrecorded instrument. It is to the terms of this unrecorded instrument that all future landlords must look.

From the facts before me I find that all purchasers since November 7, 1930 (the date of the recording of the short form agreement of October 31, 1930), had notice of the modification agreement, both as to the short form recorded instrument and the long form unrecorded instrument therein referred to. The Manufacturers Trust Company, as trustee, the mortgagee of the premises, with full knowledge of this modification agreement could have terminated this tenancy by making the tenant a party to the foreclosure suit, thereby foreclosing the tenant from any rights under the original lease and the modification. This it failed to do and chose to continue the tenancy. It cannot choose that which is beneficial under the lease and reject that which may be a detriment.

Likewise, when the Manufacturers Trust Company, as trustee, purchased the property from the referee it accepted these leases with the modification and with full knowledge of the provisions thereunder.

As already stated, this landlord had not only constructive notice but actual notice of the original agreement of 1925 and the modification agreements, both the long form unrecorded instrument and the short form recorded instrument.

In view of the above I hold that the tenant may assert his claim for $50,000 in a proceeding upon the same contract of lease.

The landlord contends that the tenant's offset was not in existence on June 16, 1931 (the date when the then owner, Benenson City Terminal Corporation, assigned to the Manufacturers Trust Company, as trustee, the leases involved herein), as the payments due under the first agreement accrued after the date of the assignment of said leases.

Such contention, that there cannot be an offset for $50,000 because the payments under the agreement were not due and payable until after the assignment of the leases, cannot be upheld. An analogous situation to the one here involved was before the Court of Appeals in the case of *Seibert* v. *Dunn* (216 N. Y. 237). In that case a suit was brought by the assignee of a claim for a sum of money arising under a contract between the defendant and the plaintiff's assignor for the supplying of vitrified bricks to the defendant. The defendant set up as a counterclaim a breach of the contract by the assignor occurring subsequent to the assignment. Up to the time of the assignment part payments were made as the brick was delivered. The court said: " The contract discloses with clarity and certainty that it was an entire and not a divisible contract. Full and complete performance on the one side constituted the consideration for performance on the other. The corporation was bound to deliver all the vitrified brick which

the construction required. The subsidiary stipulations as to delivering them as ordered and as to paying for the quantity laid monthly do not split the contract into as many distinct parts or contracts as there shall be shipments or payments. The payments were merely advancements upon the whole price and not ratable payments for the performance of distinct parts." As in the instant case the contract there was entire and not a divisible one. In allowing the offset the court said: " * * * the assigned right sprang from a contract entered into by and obligating the assignor, that the obligation of the debtor to pay was based upon the obligation of the assignor a violation of which would entitle the debtor to the right of recoupment, and the assignee occupied, as to the assigned claim, the place and position of the assignor — at least as to the rights accruing prior to a notice to the debtor of the assignment. The assigned claim, in judgment of law, was subject to the right of the debtor to claim damages for a violation, prior to its enforcement, by the assignor of his obligation. The assignee, in suing the claim, stood in the place of the assignor, succeeding to the benefits which it might bring, but chargeable to the extent of it with the liabilities of the assignor arising from his default, or in exact and ordinary language the assignee represented the assignor in regard to the claim. One who occupies another's place and succeeds to his beneficial rights in such way that he may also in some degree be charged with his liabilities represents him."

The tenant's offset of $50,000 is, therefore, allowed and a final order awarded to the tenant dismissing the landlord's petition.

Submit final order on two days' notice.