Scileppi, J.
Winco Sales Corporation (herein called Winco) was a distributor and jobber of goods. C & H Air Conditioning Fan Co., Inc. (herein called C & H) was a manufacturer of electric fans. In the Summer of 1955 Winco was engaged in selling a quantity of electric fans which it had purchased from C & H to Klein Department Stores, Inc. (herein called Klein’s). Some time thereafter C & H, desiring to acquire Klein’s as a customer, entered into negotiations with Winco. A tentative agreement was reached whereby Winco, in return for the loss of Klein’s as a customer, was to become C & H’s distributor with regard to the sale of electric fans to Klein’s in 1956, and was to receive 50 cents commission for each fan actually bought from C & H and paid for by Klein’s. In a written order from Winco to 0 & H dated February 9, 1956 requesting delivery of 1,500 fans, the essential elements of the afore-mentioned tentative agreement were set forth, including a provision that Winco was “ to receive a commission of 50^ fan [sic] for all fans sold to Klein’s”.
On May 11, 1956 C & H in acceptance of the order of February 9 shipped fans to Winco. The invoice for this shipment provided : ‘‘ Freight is allowed on this invoice upon receipt of paid freight bill. ”[1] The net amount due on the invoice was assigned, as a receivable, to James Talcott, Inc. (herein called Talcott) on May 11 and a copy thereof was delivered to Talcott. Winco paid the freight bill on or about May 28, 1956 and forwarded a copy of the paid bill to C & H.
*230 On or before July 16, 1956 Klein’s had paid for 5,229 of C & H’s fans which had been handled by Winco.[2] In a letter dated August 14, 1956, directed to 0 & H, Winco demanded the commissions due on the sale of fans to Klein’s and also enclosed its check payable to C & H as part payment on the May 11 invoice. Thereafter, on August 27, 1956, Winco received notice in writing of the assignment of the May 11 invoice from 0 & H to Talcott.[3]
Talcott, then, as an assignee, commenced the instant action for the unpaid balance due on the invoice. Winco interposed counterclaims for the freight charges paid in connection with the delivery of fans on May 11 and for commissions allegedly earned on the sale of some 8,354 fans by Klein’s in 1956. The case was tried without a jury in what is now the Civil Court, New York County. The trial court rendered a judgment in favor of Talcott on the assigned claim, allowing, however, Winco’s counterclaim for the freight charges and part of the counterclaim for commissions (50 cents commission for each of 5,229 fans was allowed).[4]
Upon appeal, the Appellate Term unanimously modified the judgment by striking out Winco’s counterclaims. In an opinion (28 Misc 2d 612), the Appellate Term stated in substance that, pursuant to subdivision 1 of section 267 of the Civil Practice Act (now CPLB 3019, subd. [c]), a defendant in an action brought by an assignee on an assigned claim could assert as a counterclaim only a claim against the assignor which had matured prior to the time of assignment, and concluded that, since the earliest date the freight charge claim could have matured was May 28 and the commission claim July 16,[5] both obviously after the date of assignment on May 11, said claims *231 were not allowable as counterclaims against the assignee, Talcott. The Appellate Division unanimously affirmed the Appellate Term determination.
The only issue of substance presented on this appeal is the allowability of the counterclaims.
Prior to 1936 section 266 of the Civil Practice Act defined counterclaims as;
“ 1. A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff’s claim or connected with the subject matter of the action.
“ 2. In an action on contract, any other cause of action on contract existing at the commencement of the action.”
Subdivision 1 obviously referred to a counterclaim in the nature of recoupment, and subdivision 2 to one in the nature of setoff (Seibert v. Dunn, 216 N. Y. 237; Carmody’s New York Practice [7th ed., Forkosch, 1956], § 332, pp. 353-354). Section 267 of the Civil Practice Act, as in effect prior to 1936, provided in pertinent part:
‘ ‘ Rules respecting the allowance of counterclaims. The counterclaim, specified in subdivision second of the last section, is subject to the following rules:
“1. If the action is founded upon a contract which has been assigned by the party thereto, * * a demand existing against the party [6] thereto or an assignee of the contract at the time of the assignment thereof, and belonging to the defendant, in good faith, before notice of the assignment, must be allowed as a counterclaim to the amount of the plaintiff’s demand, if it might have been so allowed against the party, or the assignee, while the contract belonged to him.” (Emphasis supplied.)
The restriction of subdivision 1 of section 267 of the Civil Practice Act applied only to those counterclaims in the nature of setoff.[7]
A counterclaim in the nature of recoupment (that is, a claim arising out of the same contract or transaction sued on in the complaint), however, was assertable in an action by an assignee even though said claim matured after the time of the assign *232 ment or after notice of the assignment (Kean v. Saxton & Co., 257 N. Y. 412; Seibert v. Bunn, supra; Blog v. Burden & Co., 238 App. Div. 634; 7 N. Y. Contracts Law, § 1115, p. 61). In 1936 section 266 of the Civil Practice Act was amended by defining a counterclaim as any cause of action in favor of the defendant against the plaintiff and eliminating the two subdivisions theretofore contained in the section. At that time section 267 was also amended to read “ The counterclaim mentioned in the last section ’ ’. .
The problem posed is whether the afore-mentioned amendments were intended to eliminate the distinction between counterclaims in the nature of setoff and those in the nature of recoupment, and to subject all counterclaims asserted against an assignee to the restrictions set forth in the first subdivision of section 267.
The Judicial Council, in recommending the 1936 amendments affecting sections 266 and 267 to the Legislature, stated that “ When a plaintiff is suing on an assigned cause of action the present limitations in the practice are retained unchanged” (Second Annual Report of N. Y. Judicial Council, 1936, p. 119). Moreover, the express intention of the Legislature in adopting the amendments was to liberalize procedure with regard to the assertion of counterclaims. It is difficult to conceive then that the fundamental differences between recoupment and setoff were intended to be eliminated, thereby restricting the assertion of counterclaims in the nature of recoupment (Carmody’s New York Practice [7th ed., Forkosch, 1956], § 332, pp. 353-354; Peterfreund, Annual Survey of New York Law: Civil Practice, 36 N. Y. U. L. Rev. 1561, 1572 [1961]).
There is a division of authority in the lower courts. In several cases (see, e.g., Termini v. Arthur Exhibitions, 9 Misc 2d 833; Yokohama Specie Bank v. Milbert Importing Corp., 182 Misc. 281) the courts have stated that the rules set forth in Seibert v. Dunn (supra), regarding the assertion of counterclaims in the nature of recoupment in an action on an assigned claim, survived the 1936 amendments. Whitehall Mercantile Corp. v. Jamaica Ellbee Furriers’ Corp. (54 N. Y. S. 2d 653) and the instant case, although to the contrary, have been criticized (see, e.g., Collins, Annual Survey of New York Law: *233 Contracts, 36 N. Y. U. L. Rev. 1469, 1473-1474 [1961]; Peterfreund, Annual Survey of New York Law: Civil Practice, 36 N. Y. U. L. Rev. 1561,1572 [1961]).
In our opinion the more reasonable view is that the rules in Seibert v. Dunn (supra) survived the 1936 amendments. Not only does this appear to have been the intention of the Legislature, but to restrict the assertion by a defendant of a counterclaim in the nature of recoupment as a counterclaim in the nature of setoff is restricted ‘ ‘ might in effect change the [defendant’s] contract by forcing him to give credit to the assignor where none had been intended or contemplated ’ ’ (Collins, Annual Survey of New York Law: Contracts, 36 N. Y. U. L. Rev. 1469, 1473 [1961]; see, generally, Matter of National Cash Register Co. v. Joseph, 299 N. Y. 200, 203; 2018 Seventh Ave. v. Nach-Haus Leasing Corp., 289 N. Y. 490, 496).
In the case at bar there can be no doubt — although Talcott contends otherwise — that Winco’s counterclaims arose out of the same ‘ ‘ contract or transaction ’ ’ which resulted in the receivable assigned to Talcott, as evidenced by the order of February 9. These counterclaims, therefore, were assertable by Winco against Talcott notwithstanding the fact that they matured after the time of assignment (Seibert v. Dunn, supra).[8]
Inasmuch as the trial court made no findings of fact, it is impossible to ascertain from this record the reason for limiting Winco’s recovery to only part of the commissions claimed. It may be that the court found that the contract between Winco and C & H only required commissions for fans bought and paid for by Klein’s in 1956, and thus disallowed Winco’s claim for commissions on those fans paid for in 1957. Moreover, there is no factual finding here with regard to a credit of $6,000 in 0 & H’s favor chargeable to Winco which Talcott contends was used by O & H to extinguish Winco’s claim for freight charges and commissions. Under these circumstances a new trial is warranted with regard to the counterclaims.
*234 The judgment should he reversed and a new trial granted, with costs to abide the event.
Chief Judge Desmond and Judges Dye, Fuld, Van Voorhis, Burke and Bergan concur.
Judgment reversed, etc.

. The order dated February 9 was numbered 1217; the invoice of May 11 indicated that the shipment was being made pursuant to the order numbered 1217.

. An additional 3,125 fans had been shipped by G & H to Klein’s in 1956 for which Klein’s refused to pay, and an action was commenced by C & H against Klein’s to recover the purchase price. This suit was settled on March 27, 1957 by payment of some $66,250 by Klein’s to C & H for the fans.

. The record shows, however, that sometime in April, 1956 Winco was apprised of the fact that C & H would probably assign any receivable resulting from transactions between C & H and Winco to Talcott.

. The trial court made no findings of fact or conclusions of law, the same having been waived by the parties.

. The Appellate Term gives this date as September 6, 1958, which is obviously an error — the July 16, 1956 date is substantiated by the record.

. This phrase means a matured claim.

. A setoff is a claim arising out of contract independent of the contract bottoming the complaint (80 C. J. S., Set-off and Counterclaim, § 3, p. 7).

. The assignee is not prejudiced since it should have been aware of the actual or potential existence of any claim of the defendant arising out of the same transaction that created the assigned claim (Collins, Annual Survey of New York Law: Contracts, 36 N. Y. U. L. Rev. 1469, 1473 [1961]).