Leonard N. Cohen, J.
Should a counterclaim be barred in a subrogated claim both involving property damages where the facts arise from the same automobile accident? Plaintiff, an insurance carrier as subrogee, moves to strike such a counterclaim. The court, under the circumstances of this case, holds otherwise.
Plaintiff, the subrogated carrier, sues to recover payment of $901.58 for property damage to the vehicle of its insured. Plaintiff’s subrogor and defendant were involved in an automobile accident on April 16, 1976. Defendant has interposed a counterclaim seeking damages in sum of $398.25.
In support of the motion, plaintiff subrogee cites Occidental Ins. Co. v Herman (179 Misc 499), which was cited with approval by the Appellate Term, First Department, in Potomac Ins. Co. v Schmedes (63 NYS2d 548). Both cases were decided at a time when plaintiffs were required to plead and prove themselves free of contributory negligence in order to recover. However, CPLR article 14-A effectuated a policy of comparative negligence for all actions to recover damages for personal injury, property damage, or wrongful death where such causes of action accrued on or after September 1, 1975 (CPLR 1411-1413). Culpable conduct claimed in diminution of damages is now an affirmative defense (CPLR 1412). Therefore, at least in the instant case, the reason for the Occidental-Potomac rule (supra), no longer exists.
In Occidental (supra), the claim in chief also exceeded the amount sought by the would-be counterclaiming defendant and, as here, plaintiff’s assignor was not a party to the action. Significantly, the court noted that plaintiff’s insurance contract was not alleged to include liability. The court reasoned in Occidental that an assignee, as plaintiff, would succeed to the benefits of the assignment but was chargeable to its extent with the liability of the assignor (citing Seibert v Dunn, 216 NY 237); however, under the negligence law then in existence, the assignee could obtain no benefit unless it prevailed. Not only did the subrogated carrier have the negligence of the *61 defendant to prove; it was required to prove the assignor’s freedom from any contributory negligence. A successful subrogated plaintiff thus received the benefits of his assignment based upon a theory of 100% negligence attributed to the unsuccessful defendant. However, if a defendant were successful on a counterclaim under those circumstances, there would be no benefits to which plaintiff could succeed under its assignment, and the policy — limited to collision coverage— would then be effectively enlarged into a liability coverage and the liable subrogor would still not have been a party to the action. (For purposes of this type of litigation, then and now, the distinction between an assignee and a subrogee is moot; see 57 NY Jur, Subrogation, § 2).
The procedure established under the Occidental-Potomac rule has carried over through today. A defendant who wished to counterclaim was compelled instead to commence an action independently against the subrogor, and thereafter a party would move to consolidate on grounds that the facts and law arose out of the same set of circumstances. This was and is an inconvenient, costly and time consuming process. If not achieved swiftly, it could be prejudicial.
It is wasteful to encourage unnecessary multiplicity of lawsuits where circumstances are present to prevent the cumbersome procedure outlined and where prejudice would not result. When the degree of negligence became apportionable, on September 1, 1975, it became possible for both a plaintiff and a counterclaiming defendant to recover on their respective claims in accordance with the percentage of culpable negligence found. A noncounterclaiming defendant now has a defense based on apportionment of negligence. (See 3 Weinstein-Korn-Miller, NY Civ Prac, par 3019.02; CPLR 1412.) The obligation of the subrogated carrier to go forth with proof of defendant’s negligence and to defend against culpable conduct claimed in diminution of damages is the same whether or not defendant alleges a counterclaim, and remains unaffected by the type of contract between the subrogated plaintiff and its insured. Where that contract contains liability coverage, as well as the collision coverage with the same carrier upon which plaintiff is subrogated, then surely there exists a special situation permitting departure from the established general rule. Plaintiff here has failed to deny that its contract with the subrogor included liability coverage, and accordingly the counterclaim should be interposed. It is well known that *62 collision and liability coverages are usually part of the same contract of automobile insurance, and where they are not the reality of the separate interests must be alleged.
A determination is unnecessary here as to whether my decision would be the same if there were no liability coverage; or if the counterclaim was either in excess of the claim in chief (Seibert v Dunn, supra; 57 NY Jur, Subrogation, § 26) or for alleged personal injuries. Suffice it to say that the matter deserves legislative treatment so as to facilitate the practicality of one trial where diverse claims arise from a common set of facts and law.
CPLR 3019 (subd [d]) provides the court with authority to order a separate judgment on a counterclaim. It appears that the intent of. the Legislature was to prohibit an insurer in a comparative negligence case to set off a judgment against the other party. Consequently, where both parties are insured, two verdicts would enter, and since liability insurance is compulsory within the State of New York, the procedure urged herein may have been contemplated by the Legislature. (See the authorities cited in 3 Weinstein-Korn-Miller, NY Civ Prac, par 3019.02, n 16-b; and McKinney’s Session Laws of 1975, pp 1483-1492.)
Further, the court finds the insured subrogor under the circumstances is a necessary party in the defense of the counterclaim and, pursuant to CPLR 1007 the court sua sponte adds the insured, Major Industrial Contracting Co., Inc., as a party plaintiff in this action.
Thus, at least under the circumstances set out here, the end of the reason for the old law has effectively signalled its demise. Settle order on 10 days’ notice.